IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICK BLACK<br><br>    Plaintiff,<br><br><br><br>       vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security<br><br>    Defendant, | MEMORANDUM DECISION AND<br>ORDER REMANDING CASE ON<br>ADMINISTRATIVE APPEAL<br><br><br><br>Case No. 2:07-CV-213 TS |

This matter comes before the Court on Plaintiff's Motion to Review Commissioner's Decision denying Plaintiff's application for Disability Insurance Benefits ("DIB"). The Court heard argument on September 17, 2007. For the reasons discussed below, the Court will remand this case back to the Administrative Law Judge ("ALJ").

## I. PROCEDURAL BACKGROUND

Plaintiff filed for DIB on August 21, 2001, alleging disability for the period July 1, 2000 through December 31, 2002, the date Plaintiff was last insured. Plaintiff alleged disability due to back and knee injury, blindness in one eye, depression, anxiety and generalized pain of indeterminate source all over his body. The claim was denied initially and on reconsideration. A request for hearing was timely filed. A hearing was held on December 19, 2002, where Plaintiff

appeared and testified.  The Administrative Law Judge ("ALJ") issued an adverse decision on

May 27, 2003.  Plaintiff timely made a request for review with the Appeals Council.  The

Appeals Council accepted jurisdiction and in an order dated June 23, 2004, remanded the case

back to the Office of Hearings and Appeals with instructions to provide Plaintiff with an

additional hearing.  On February 2, 2005, Plaintiff appeared and testified at a hearing before

another ALJ.  The ALJ denied Plaintiff's claim on May 17, 2005.  A request for review was

timely filed.  The Appeals Council denied Plaintiff's request for review, accepting the ALJ's

decision as the final decision of the Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Complaint with this Court on April 4, 2007.

## II. STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether her findings

are supported by substantial evidence and whether the correct legal standards were applied.[1]  If

supported by substantial evidence, the Commissioner's findings are conclusive and must be

affirmed.[2]

Substantial evidence means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[3]  Also, "[s]ubstantial evidence requires 'more than a scintilla,

but less than a preponderance.'"[4]  The ALJ is required to consider all of the evidence, although

---

[1]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2]*Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[3]*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th  Cir. 1996).

[4]*Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (citation omitted); *see also White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001).

he or she is not required to discuss all of the evidence.[5]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[6]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[7]

### III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining disability.[8]  The five steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals the criteria for an impairment listed in Appendix 1 of 20 C.F.R. Subpt. P; (4) whether the impairment prevents the claimant from performing his past relevant work; and (5) whether the impairment prevents the claimant from performing other work.  The burden is on the Plaintiff to meet the first four steps.  However, if Plaintiff does meet all four, the burden shifts to the Commissioner to establish that there are other jobs existing in a significant number in the national economy which Plaintiff is capable of performing.

At Step Two, the claimant must demonstrate a "medically severe impairment or combination of impairments."[9]  This is a de minimis showing,[10] serving to weed out clearly

---

[5]*Clifton*, 79 F.3d at 1009.

[6]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[8]*See* 20 C.F.R. § 404.1520(a)-(f).

[9]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 2005).

[10]*Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

unmeritorious claims at an early stage.[11]  An impairment is defined "as an abnormality that *can* be shown by medically acceptable clinical and laboratory diagnostic techniques, and, in fact, *must* be established by medical evidence, as opposed to a claimant's subjective statement or symptoms.[12]  A medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities.[13]  The Regulations further require that if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.[14]  Thus, in order to proceed through the step-wise analysis required for a finding of disability, there must be a finding of "severe" or the analysis necessarily ends at Step Two.

In this case, at Step Two, the ALJ found that Plaintiff had multiple severe physical impairments.  Specifically, the ALJ found that Plaintiff's back, knee and arm problems were all severe.  In addition, the ALJ found the record supported a finding of severe impairment with respect to Plaintiff's mood disorder and substance abuse impairments.  At Step Three, the ALJ found that these impairments did not meet the requirements of a listed impairment.  At Step Four, the ALJ discounted the credibility of Plaintiff's testimony because there were several inconsistencies in the record.  Plaintiff did in fact work just prior to the time period in question and the bulk of the objective medical record did not support the subjective statements made by the Plaintiff.  The ALJ found that Plaintiff's impairments did not prevent him from performing

---

[11]*Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[12]*Henson v. Barnhart*, 373 F.Supp.2d 674, 682 (E.D.Tex. 2005) (citing 20 C.F.R. § 416.908 (2004).

[13]20 C.F.R. § 404.1520.

[14]20 C.F.R. § 404.1523.

his past relevant work.  Additionally, at Step Five, the ALJ found that Plaintiff could perform jobs available in the national economy.

In his appeal, Plaintiff contends that (A) the ALJ erroneously discounted Mr. Black's credibility; (B) the ALJ failed to include Plaintiff's mental impairments in the hypothetical posed to the Vocational Expert ("VE") Dina Galli; and (C) the ALJ failed to consider the opinions of all of Plaintiff's treating physicians in her residual functional capacity ("RFC") assessment.  The Court has reviewed the arguments as set forth by the parties in their briefs and at oral argument, as well as the entire certified record, and makes its ruling as discussed below.

A. *Credibility Determination*

To assess a claimant's credibility, the ALJ must "consider whether the objective evidence established a pain-producing impairment or whether there was a loose nexus between that impairment and claimant's subjective complaints of pain.[15]  If objective medical evidence shows that the claimant has pain, the ALJ is required to consider assertions of severe pain and evaluate believability.[16]  Moreover, when then objective medical evidence does not support claimant's complaints of pain, the ALJ must look to the entire record to determine credibility.[17]  The ALJ considers the following factors when assessing credibility:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than

---

[15]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

[16]*Id.*

[17]SSR 96-7p.

treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[18]

The credibility evaluation made by an ALJ is entitled to particular deference in light of the ALJ's "ability to meet the claimants and assess their physical abilities in a direct and unmediated fashion."[19]  Credibility determinations are generally binding unless there is a conspicuous absence of credible evidence supporting the determination.[20]

Plaintiff argues that the appropriate standard for an ALJ's evaluation of credibility is clear and convincing evidence.[21]  The Commissioner argues that this standard has not been adopted by the Tenth Circuit and that, in fact, credibility is a factual determination that is reviewed under the substantial evidence standard.[22]

The Court agrees with the Commissioner that substantial evidence is the correct standard under which to evaluate the ALJ's credibility evaluation.  While the Ninth Circuit has adopted a clear and convincing standard, as noted in Plaintiff's brief,[23] Defendant points out that under Tenth Circuit law, credibility evaluations are subject to review under a substantial evidence

---

[18]*Id*. at 3.

[19]*Lopez v. Barnhart*, 2006 WL 1618511, at *4 (10th Cir. 2006) (internal quotations omitted).

[20]*Murphy v. Barnhart*, 2006 WL 2323954, at *4 (D. Kan. 2006) (citing *Patterson v. Apfel*, 72 F.Supp.2d 1212, 1217, (D.Kan. 1999) and *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)).

[21]*See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

[22]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[23]Pl's Reply Brief (Docket No. 16) at 8.

standard.[24]  This Court is bound by Tenth Circuit law, thus, Plaintiff's arguments that the ALJ

does not meet the "clear and convincing" standard are without merit.

Plaintiff next contends that his subjective statements regarding his pain and his ability to

care for himself are conclusive as to a finding of disability.  This is not the correct standard for

evaluating disability.  As noted above, an impairment must be established by medical evidence,

not just a claimant's subjective statements.  He argues that the corroborating statements of his

wife and the medical evidence from his treating physicians support a finding a disability.  His

physicians did record Plaintiff's own assessment of his pain but were unable to find a "medically

determinable" reason for such high pain levels.  Specifically, Dr. Anderson examined Plaintiff in

January 2002 and noted that "nothing [he] could think of fits this picture."[25]  Drs. Call and Hare

conducted several tests that failed to uncover a medical condition that would account for the

Plaintiff's complaints of pain.  In addition, Dr. Gage's notes indicate that part of treatment at

Valley Mental Health was to investigate the possibility of malingering and Dr. Christensen noted

that Plaintiff may be motivated by his "quest for Social Security Disability."[26]  Lynn Barck, a

physical therapist who saw Plaintiff in September 2002, noted that Plaintiff's subjective

complaints appears to outweigh the objective findings.

The ALJ relied on extensive medical records compiled by several doctors that fail to

---

[24]*Castellano v. Sec'y of Health and Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994)
(a reviewing court evaluates whether the Secretary's factual findings are supported by substantial
evidence in the record viewed as a whole); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)
(credibility determinations should be "closely and affirmatively linked to substantial evidence"
rather than conclusory).

[25]R. at 319.

[26]R. at 404.

uncover any basis for Plaintiff's complaints of pain.  Their findings are summarized below.

On February 3, 2000, Dr. Howe examined Plaintiff and noted Plaintiff was doing "really quite well," though he did suffer from persistent to mild degenerative arthritis.  In July 2000, Plaintiff underwent endoscopic sinus surgery for the treatment of chronic sinusitis.  On December 18, 2000, Plaintiff had an EEG that was deemed normal.  The next day, an MRA and MRI of Plaintiff's brain were performed and deemed unremarkable.

In May 2001, Plaintiff met with Dr. Chick regarding ongoing problems with his hands. On June 1, 2001, Dr. Chick performed right carpal tunnel release surgery.  On July 23, 2001, Plaintiff told Dr. Chick that he tired easily and tended to drop things while Plaintiff was at work at a food pantry.  Upon examination, Dr. Chick noted that Plaintiff had normal sensation in his fingers, good wrist motion and good strength.

Plaintiff returned to Dr. Howe on July 9, 2001, complaining of left knee pain.  An x-ray on Plaintiff's left knee revealed only mild degenerative arthritic changes.  Dr. Howe prescribed strengthening exercises.

Between February 2001 and April 2002, Dr. Vine prescribed medications for pain and insomnia for Plaintiff.  In September 2001, Dr. Vine began writing letters to the Department of Workforce Services, indicating that Plaintiff was disabled until further notice and that his condition had not been fully diagnosed.  Plaintiff requested in January 2002 that Dr. Vine also indicate in his letters that Plaintiff's wife was needed at home to care for Plaintiff.

Plaintiff saw Dr. Christensen at Valley Mental Health in December 2001.  He complained of stress and frustration at his physicians' inability to diagnose his physical symptoms.  Dr. Christensen diagnosed Plaintiff's impairment as adjustment disorder with mixed anxiety and depressed mood.  However, Dr. Christensen did note that Plaintiff's current GAF score was 50

and 55 was the highest in the past year.  Dr. Christensen also noted Plaintiff's quest for Social Security disability based solely on his physical problems.  As noted above, one of the goals of Plaintiff's treatment at Valley Mental Health was to assess possible malingering.

On January 31, 2002, Dr. Call evaluated Plaintiff and made no findings that would indicate that Plaintiff had disabling pain.  Dr. Call noted normal MRI, MRA and CSF analysis.

Dr. Caplan, a State agency physician, examined Plaintiff on February 20, 2002 to assess his RFC.  Dr. Caplan found Plaintiff could perform light work involving no more than occasional overhead reaching and no repetitive activities.

On March 15, 2002, Dr. Petajan, a neurologist, examined Plaintiff and determined that Plaintiff's symptoms were localized to his joints.

Dr. Vine continued to see Plaintiff and in May 2002, noted Plaintiff's use of "fairly substantial amounts of chronic pain medication."  He noted that Plaintiff's use of pain medication was appropriate.  He also noted ongoing medical evaluation of Plaintiff's chronic pain and progressive weakness.

On September 16, 2002, Dr. Hare at the University of Utah Pain Management Clinic examined Plaintiff and reported mild pain behaviors but indicated that the examination was largely normal.  Lynn Barck, P.T., noted significantly inconsistent findings on examination and that Plaintiff's subjective complaints of severity of pain was somewhat greater than could be supported by objective evidence.

On October 29, 2002, Plaintiff saw Dr. Speed at the University of Utah.  Plaintiff complained of significant back and neck pain over the last 18 months, foot drop and severe numbness in his arms and legs.  Dr. Speed opined that Plaintiff had chronic myofascial pain but found no evidence of radiculopathy or disc lesion.  Moreover, Plaintiff did not appear to have

9

any significant cervical spine pathology.  Dr. Speed prescribed Celexa, Zanaflex and physical

therapy.  Plaintiff told Dr. Speed in December 2002 that he did not like antidepressants and that

Zanaflex made him angry so he discontinued use of both medications.

Carol F. Gage, Ph.D., had 10 therapy session with Plaintiff between June and October

2002.  In a letter dated December 17, 2002, Dr. Gage indicated that Plaintiff strongly believed he

had a medical problem that had not yet been identified.  She indicated that Plaintiff had

characteristics of dependent and avoidant personality disorders and terminated therapy because

his pain prevented him from keeping his appointments.  Dr. Gage's evaluation further stated that

Plaintiff had no limitations in the following areas: (a) work-related mental functioning, (b) social

functioning, (c) maintaining concentration, (d) carrying out simple and detailed instructions, and

(e) interacting appropriately with the public, supervisors, and co-workers.  She did indicate that

he had extreme limitations performing activities within a schedule and maintaining regular

attendance and marked restrictions in activities of daily living.  One of the goals of Plaintiff's

treatment with Dr. Gage at Valley Mental Health was to "help assess possible malingering."[27]

After the relevant time period, the Plaintiff continued to seek medical attention.  He was

examined again by Dr. Petajan in March 2003.  Dr. Petajan noted that Plaintiff did not appear to

be weak, had no focal neurologic findings and that Plaintiff's symptoms were localized to his

joints.

Another neurologist, Dr. Ni, examined Plaintiff in April 2003 and found intact sensation,

normal gait, reflexes, strength, memory and cognitive function.  He could not find any neurologic

explanation for Plaintiff's complaints of pain.

---

[27]R. at 31.

Dr. Jones also examined Plaintiff after the time period at issue.  He issued multiple statements that were in conflict with each other.  Dr. Jones opined that Plaintiff had been unable to work since 2000, three years before Dr. Jones first examined Plaintiff.  However, Dr. Jones also issued statements indicating that Plaintiff had the capacity to perform sedentary work and could return to work on a designated date.  He also noted that Plaintiff showed improvement with medication.  Finally, Dr. Jones specialized in obstetrics and gynecology.

After reviewing the medical evidence, Dr. Atkins testified at the February 2, 2005 hearing before the ALJ that the Plaintiff's mental impairments consisted of an anxiety disorder and depression.  However, Dr. Atkins stated that his impairments did not meet or equal a listed impairment at any time since July 1, 2000.  Dr. Atkins also indicated that Plaintiff had no more than slight limitations in all areas of work-related mental functioning.

Plaintiff testified in the December 19, 2002 hearing that he stopped working in July 2000 because his recovery from sinus surgery lasted longer than his employer permitted.  He also testified at the February 2, 2005 hearing in which he stated that he was not currently on pain medication and that Oxycontin and Hydrocodone were only marginally helpful in managing his pain.  Plaintiff further testified that he could not work due to severe pain in his joints and muscles and that walking just a little bit would put him down for two days.  Plaintiff stated that he was constantly fatigued, spent seven of eight hours in a reclining chair and needed help from his wife to bathe and dress.

Based on the extensive body of objective medical evidence contained in the record that failed to uncover a medically determinable for Plaintiff's physical pain, the ALJ discounted Plaintiff's subjective complaints of generalized, debilitating pain.  The Court finds substantial evidence in the record to support the ALJ's finding that the Plaintiff was not fully credible.

B.  *Inclusion of Mental Limitations in Hypothetical to VE*

Plaintiff argues that the ALJ failed to include his mental limitations in the hypothetical she posed to the VE.  He argues that Dr. Gage's findings of severe and marked impairment in two areas should have been considered in the RFC assessment.  The Commissioner argues that the ALJ fully considered all the medical evidence in her RFC assessment, giving special consideration to the opinions of Plaintiff's treating physicians, Drs. Gage and Vine.

In this case, the ALJ considered the extensive medical history of Plaintiff in determining that Plaintiff met his Step Two burden.  During the period at issue, the ALJ found that Plaintiff's carpal tunnel syndrome, C6-7 cervical disc herniation without radiculopathy, retinal scarring in the right eye, mood disorder and history of substance abuse were all severe based on the requirements in 20 C.F.R. § 414.1520(c) and could affect the Plaintiff's ability to work.  Specifically, Plaintiff's C6-7 herniation and his visual impairment could significantly affect his ability to perform basic work activities.  Additionally, the ALJ found that the record adequately demonstrates that Plaintiff suffers from degenerative arthritis of the left knee that could significantly affect his ability to stand and walk.

With respect to Dr. Gage's findings, the ALJ noted that Dr. Gage found "marked or extreme" limitations in only one area as a result of depression and anxiety.  However, Dr. Gage in fact noted marked or extreme in two areas of mental impairment.  Moreover, in the hypothetical posed to Dina Galli, the VE who testified at 2005 hearing, the ALJ did not include any mental limitations.

Step Four requires a claimant to demonstrate that, though impairment does not meet the requirements of any listing, the impairment nevertheless prevents the claimant from performing

his past relevant work.[28]  A claimant's RFC is the most that can be done after considering the

effects of physical and/or mental limitations that affect the ability to perform work-related

tasks.[29]

After considering the level of impairment and the credibility of Plaintiff, the ALJ's RFC

analysis found that Plaintiff was capable of performing a significant range of light work.  The

ALJ found that, during the period at issue, the claimant was able to perform light work with the

following limitations:

> He needed the opportunity to change positions at will.  He could only
> occasionally: climb, balance, stoop, kneel, crouch, and crawl.  He needed to avoid
> hazards such as heights, machinery, and so forth and situations requiring
> binocular vision.  He was limited in reaching in all directions including overhead.
> He needed to avoid repetitive motion with his hands.  Finally, he needed to avoid
> concentrated exposure to heat, cold, humidity, and vibration.

At the hearing, the VE stated that Plaintiff would be able to perform one of his past relevant jobs

– credit clerk.[30]

Plaintiff argues that the ALJ failed to consider all of  her Step Two findings in the Step

Four analysis.  The Court agrees that the ALJ did not adequately consider the mental limitations

found at Step Two in her RFC assessment.  As outlined above, Dr. Gage found marked or

extreme limitations in two areas of mental function but those Step Two findings were not

included in the Step Four RFC assessment.  Thus, the Court will remand to allow the ALJ to

include the mental limitations from Step Two in her Step Four RFC assessment.

C. *Weight of Treating Physicians' Opinion*

---

[28]20 C.F.R. § 404.1520(e).

[29]20 C.F.R. § 404.1545(a)(1), SSR 96-8p.

[30]R. at 917.

Plaintiff argues that the ALJ did not give proper consideration to the testimony of his treating physicians in her Step Four RFC analysis.  The Commissioner argues that the disability assessments of Drs. Gage, Vine and Jones were internally inconsistent and inconsistent with and unsupported by objective findings and were therefore not entitled to controlling weight.  Further, the Commissioner argues that the testimony of Dr. Jones is not entitled to controlling weight because his assessments were unsupported by objective findings and internally inconsistent.  Moreover, Dr. Jones he treated Plaintiff only after the relevant time period.

The Tenth Circuit has outlined the factors to be considered by the ALJ in determining what weight to give the opinion of the Plaintiff's treating physician:

> The ALJ must give "controlling weight" to the treating physician's opinion, provided that opinion is "well-supported . . . and is not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(d)(2).  We have said that a treating physician's opinion is not dispositive on the ultimate issue of disability. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  In addition to its consistency with other evidence, we examine a treating physician's opinion with several factors in mind: the length of the treatment relationship, the frequency of the examination, and the extent to which the opinion is supported by objective medical evidence.  20 C.F.R. § 404.1527(d)(2).[31]

Therefore, the ALJ is not bound to the treating physician's opinion on the Plaintiff's alleged disability if it is inconsistent with other substantial evidence in the record.

When a "treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."[32]  Those factors are:

---

[31]*White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2002).

[32]*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotations omitted).

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[33]

If the ALJ rejects a treating physician's opinion completely, she "must give specific, legitimate reasons for doing so."[34]

In this case, the ALJ evaluated the opinions of Plaintiff's treating physicians, Drs. Vine, Gage and Jones and found that the objective findings in the record did not support the statements regarding disability made by Drs. Vine and Jones.

As discussed above, Dr. Vine wrote several letters to Workforce Services indicating that Plaintiff was disabled from pain.  However, the ALJ noted that his notes were sparse and consisted in large part of brief subjective comments from Plaintiff.  The MRI ordered by Dr. Vine showed only small, mild abnormalities.  Testing by other physicians revealed, at most, mild to moderate problems.  Thus, Dr. Vine's statements in the letters to Workforce Services were not supported by objective medical evidence.

As previously noted, Dr. Jones treated Plaintiff after the time period at issue.  He issued multiple statements that were in conflict with each other.  Dr. Jones opined that Plaintiff had been unable to work since 2000, three years before Dr. Jones first examined Plaintiff.  However, Dr. Jones also issued statements indicating that Plaintiff had the capacity to perform sedentary work and could return to work on a designated date.  He also noted that Plaintiff showed

---

[33]*Id.*

[34]*See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

15

improvement with medication.  Finally, Dr. Jones specialized in obstetrics and gynecology.  The ALJ found Dr. Jones' opinion was not entitled to controlling weight because it was internally inconsistent and was not supported by objective medical evidence.

Dr. Gage filled out a check-mark form that indicated Plaintiff had extreme limitations in the ability to perform activities with a schedule and maintain regular attendance.  She also indicated that Plaintiff had marked limitations in the ability to sustain an ordinary routine.  On another form, she indicated that Plaintiff had minimal limitations in the ability to perform the mental activities required to work.  Thus the ALJ found Dr. Gage's statements to be "somewhat ambiguous and internally inconsistent."[35]  However, the ALJ failed to give specific, legitimate reasons for completely excluding Dr. Gage's mental health assessments. As previously stated, the Court remands to allow the ALJ to address Dr. Gage's mental assessments either by giving specific, legitimate reasons for excluding Dr. Gage's opinion or by including Dr. Gage's opinions in the RFC assessment.

The Court finds that the ALJ's findings regarding the weight given to the opinions of Plaintiff's treating physicians were appropriate, with the exception of Dr. Gage's mental evaluations.  The medical opinions of Dr. Vine were often internally inconsistent and inconsistent with the objective medical evidence in the record and were therefore not entitled to controlling weight.  Dr. Jones treated Plaintiff after the time period at issue, offered conflicting and inconsistent opinions that were not supported by objective medical evidence.  As discussed above, Dr. Gage's findings regarding Plaintiff's mental limitations were inappropriately excluded from the RFC assessment.

---

[35]R. at 31.

IV. CONCLUSION

Having evaluated the record as a whole, the Court finds that the ALJ's findings are supported by substantial evidence.  The credibility determination by the ALJ was also supported by substantial evidence, which is the appropriate standard by which to evaluate the ALJ's findings.  The weight assigned to each treating physician was also appropriate as the objective record was not supportive of a finding of disability or concurrence with Plaintiff's subjective evaluation of his pain levels, with the exception of Dr. Gage.  In her RFC assessment, the ALJ failed to include the severe and marked mental limitations indicated by Dr. Gage.  Thus the Court remands to allow the ALJ to consider Plaintiff's mental limitations in the RFC assessment or to give specific, legitimate reasons for failing to consider them previously.  It is therefore

ORDERED that this action be REMANDED to the ALJ pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.  The Clerk of Court shall enter judgment remanding this case and shall close this case forthwith.

Dated September 18, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge